# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GREGORIO FUNTANILLA, JR.,<br><br>        Petitioner,<br><br>  v.<br><br>D.B. ADAMS,<br><br>        Respondent. | ) 1:04-cv-06312-OWW-TAG HC<br>)<br>) MEMORANDUM DECISION AND ORDER<br>) GRANTING RESPONDENT'S MOTION TO<br>) DISMISS PETITION FOR WRIT OF HABEAS<br>) CORPUS (Doc. 8)<br>)<br>) ORDER DIRECTING CLERK OF COURT TO<br>) ENTER JUDGMENT FOR RESPONDENT<br>)<br>)<br>)<br>) |

Petitioner is a state prisoner proceeding with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

On September 24, 2004, Petitioner filed the original petition, alleging various constitutional violations resulting from a prison disciplinary hearing after which Petitioner was assessed a ten-day credit loss. (Doc. 1). On April 26, 2005, Respondent filed the instant motion to dismiss, contending, inter alia, that the claims in the petition were moot because the ten-day credit loss had been restored to Petitioner pursuant to internal prison appeals processes. (Doc. 8). Petitioner filed an opposition to the motion to dismiss, alleging, inter alia, that his most recent "release date" does not reflect restoration of the ten-day assessment. (Doc. 11, p. 3). Respondent replied that the evidence already in the record indicates clearly that the ten-day loss had been

1   restored.  (Doc. 12, p. 3).

2                                    DISCUSSION

3          A.  Procedural Grounds for Motion to Dismiss

4          On April 26, 2005, Respondent filed a Motion to Dismiss the petition on various grounds

5   including mootness.  (Doc. 8.)  Rule 4 of the Rules Governing Section 2254 Cases allows a

6   district court to dismiss a petition if it "plainly appears from the face of the petition and any

7   exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4

8   of the Rules Governing Section 2254 Cases.

9          The Ninth Circuit has allowed Respondents to file a motion to dismiss in lieu of an

10  answer if the motion attacks the pleadings for failing to exhaust state remedies or being in

11  violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th

12  Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

13  remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural

14  grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp.

15  1189, 1194 & n.12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss

16  after the Court orders a response, and the Court should use Rule 4 standards to review the

17  motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

18         In this case, Respondent's Motion to Dismiss is based on, inter alia, mootness, i.e., lack of

19  a viable case or controversy invoking the jurisdiction of this Court.  Because Respondent's

20  Motion to Dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust

21  state remedies or for state procedural default and Respondent has not yet filed a formal answer,

22  the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

23         B.  Procedural History: The Prison Disciplinary Hearing.

24         At the time of the events alleged in the petition, Petitioner was an inmate in the California

25  State Prison-Sacramento.  (Doc. 1, Exh. B).  On August 30, 2001, Dr. M. Jackson, a prison

26  psychologist, was walking through Petitioner's tier to determine which inmates would like office

27  visits.  (Doc. 1, Exh. G, p. 1).  Dr. Jackson knocked twice on Petitioner's door but he refused to

28  respond verbally.  (Id.).  Since Dr. Jackson could not see into the cell because the window was

completely covered with paper and the lights were off, she obtained a flashlight and was able to

see into the cell well enough to observe a sheet concealing Petitioner from Jackson's view.  (Id.).

Jackson ordered Petitioner to remove the sheet.  (Id.).  Petitioner appeared at the door and passed

Jackson a piece of paper that had the words, "Hi Kitten," written on it.  (Id. at p. 1; p. 3).

Jackson told Petitioner his behavior was inappropriate and the "he would be written up for it."

(Id. at p. 1).

The following day, Jackson issued a Rules Violation Report ("RVR"), Log No. AS-01-

08-061, charging Petitioner with disrespect to staff.  (Doc. 8, Exh. 2).  The offense was classified

as a "serious" division F offense and Petitioner was served with a copy of the RVR on September

3, 2001.  (Id. at p. 1).  At his request, Petitioner was appointed an investigative employee ("IE"),

who interviewed Dr. Jackson, Psychiatric Technician Almanza, and Correctional Officers

Fowler, Devore, and Martin.  (Id. at pp. 5-7).   The only individual Petitioner requested the IE to

interview whom the IE did not interview was Dr. Hedblad, whom the IE determined was not

Petitioner's "assigned clinician" and who "would not provide any additional relevant specific

information other than what could be provided by the assigned clinician."  (Id. at p. 7).  On

September 28, 2001, Petitioner received his copy of the IE's report.  (Id.).

On October 2, 2001, Petitioner appeared before the senior hearing officer, waived his

right to a staff assistant and the presence of his previously requested witnesses, pled not guilty,

and asserted his mental condition as a defense.  (Id. at p. 2, p. 4).  In support of this defense,

Petitioner gave the hearing officer a copy of a request for mental health services that he allegedly

had given to Almanza the day before the incident in question.  (Id. at p.2, p. 8).  Prior to the

hearing, mental health staff had evaluated Petitioner and concluded that it was not possible to

determine if his mental illness had contributed to his alleged behavior; nevertheless, the staff

concluded that Petitioner did comprehend the charges, the disciplinary process, and did not

require a staff assistant.  (Id. at pp. 1, 3).

At the conclusion of the hearing, the hearing officer found Petitioner guilty of "disrespect

to staff."  (Doc. 8, Ex. 2, p. 2).  The hearing officer's findings were based on the RVR, the IE's

report, the note with "Hi Kitten" written on it, which Jackson had indicated Petitioner had given

her, Dr. Jackson's testimony at the hearing, and the information from the mental health staff regarding Petitioner's mental health defense, a defense the hearing officer rejected. (Doc. 8, Ex. 2, p. 2).

As a result of the hearing officer's findings, Petitioner was assessed a ten-day credit loss; he was also "counseled and reprimanded" by the hearing officer. (Id.). Petitioner subsequently appealed the decision, which resulted in the charged misconduct being downgraded from "serious" to "administrative" and the restoration of the ten-day credit loss. (Doc. 1, pp. 6-6a; Doc. 8, Exh. 2, p. 1).

Thereafter, Petitioner filed this habeas corpus petition, alleging the following grounds for relief: (1) Respondent has failed to restore the ten-day credit loss; (2) the hearing officer misapplied § 3004 of the California Code of Regulations; (3) the hearing officer violated Petitioner's due process rights at the hearing; and, (4) the disciplinary process violated Petitioner's First Amendment right to free speech. (Doc. 1).

C. Petitioner's Claims Are Moot And The Petition Should Be Dismissed.

The case or controversy requirement of Article III of the Federal Constitution deprives the Court of jurisdiction to hear moot cases. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); Wilson v. Terhune, 319 F.3d 477, 479 (9th Cir. 2003); NAACP., Western Region v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir. 1984). A case becomes moot when "it no longer present[s] a case or controversy under Article III, sec. 2, of the Constitution." Spencer v. Kemna, 523 U.S. 1, 7 (1998); Wilson, 319 F.3d at 479. In order to satisfy the case-or-controversy requirement, the parties must have a personal stake in the outcome of the suit throughout "all stages of federal judicial proceedings." Wilson, 319 F.3d at 479 (quoting United States v. Verdin, 243 F.3d 1174, 1177 (9th Cir. 2001)).

Thus, the Court has no power to decide cases that do not affect the rights of the litigants in the case before them. Defunis v. Odegaard, 416 U.S. 312, 316 (1974); Mitchell v. Dupnik, 75

F.3d 517, 527-28 (9th Cir. 1996). "To satisfy the Article III case or controversy requirement, a

litigant must have suffered some actual injury that can be redressed by a favorable judicial

decision." Iron Arrow, 464 U.S. at 70; Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26,

38 (1976).

"A habeas petition challenging the underlying conviction is never moot simply because,

subsequent to its filing, the petitioner has been released from custody." Wilson, 319 F.3d at 479

(quoting Chacon v. Wood, 36 F.3d 1459, 1463 (9th Cir. 1994)).  Some collateral consequence of

the conviction must exist, however, in order for the suit to be maintained. Spencer, 523 U.S. at

7; Wilson, 319 F.3d at 479.

In Spencer, the United States Supreme Court held that the presumption of collateral

consequences does not apply to the revocation of parole. Spencer, 523 U.S. at 12-14.  In Wilson,

the Ninth Circuit extended that rule to include disciplinary proceedings. Wilson, 319 F.3d at

480.

After reviewing the evidence in this record, the Court concludes that Wilson is

dispositive, that the issues raised in the petition are moot, and that the petition itself should

therefore be dismissed.  In Wilson, the inmate escaped from Folsom State Prison in 1984 and

was apprehended in England in 1992. Wilson, 319 F.3d at 478.  "Escape" was a rules violation

for which a prison disciplinary hearing was required. Id.  After the district attorney dismissed the

escape charges, a prison disciplinary hearing was held at the end of which Wilson was found

guilty and assessed a 150-day credit loss, loss of 90-days' privileges, and a 10-day confinement

to quarters. Id.  His "classification" score as an inmate was increased from 90 to 102. Id.

Subsequently, the assessment of the 150-day credit loss was eliminated. Id.

Wilson contended that his federal petition was not moot because he suffered "collateral

consequences" from his rules violation "conviction," including loss of conjugal visits, transfer to a higher security prison, and an increase in his "classification" score. Id. at 481. As an initial matter, the Ninth Circuit held that the inmate was not entitled to any presumption of collateral consequences as a result of a prison disciplinary proceedings. Id. Thus, the only issue was whether Wilson had "alleged [actual] consequences sufficient to meet the case-or-controversy requirement." Id. After reviewing Wilson's contentions regarding the collateral consequences of his rules violation, the Ninth Circuit rejected all of the allegations as either "unrelated" to his rules violation, discretionary with prison authorities, or "speculative." Id. at 482.

Wilson controls the Court's decision regarding mootness. First, the record clearly supports a finding that Petitioner's ten-day credit loss has been restored. Petitioner's contentions to the contrary notwithstanding, the Offender Based Information System Work Credit Query supplied by Respondent indicates that on October 14, 2004 a 10-day credit was afforded Petitioner. (Doc. 8, Exh. 3). The entry contains a notation for "AS108061". (Id.). That is the same number as that of the Rules Violation Report that initiated the hearing now challenged in the petition. (Doc. 1, Exh. G). The restoration of credits is also noted on the hearing officer's copy of the RVR, along with the date of "10/14/04." (Doc. 20, Exh. 2, p. 1).

Having found that the 10-day credit assessment had been restored to Petitioner by Respondent, and given the Ninth Circuit's holding in Wilson that collateral consequences of a prison disciplinary hearing are not presumed, the only remaining issue is whether Petitioner has established "actual" collateral consequences that are sufficient to meet the case-or-controversy requirement of Article III. Wilson, 319 F.3d at 481. He has not.

Ground One of the petition alleges that Petitioner's ten-day credit assessment has not been restored, a claim already addressed above. (Doc. 1, p. 6). In Ground Two, Petitioner argues

that insufficient evidence was presented at the hearing to support a finding that Petitioner showed

disrespect to a staff member.  (Doc. 1, pp. 6-7-a).  In Ground Three, Petitioner contends that the

hearing officer wrongfully excluded evidence of his mental health defense, i.e., specifically that

the hearing officer excluded health staff witnesses and evidence as to the side-effects of Prozac.

(Id. at pp. 8-9).  Finally, in Ground Four Petitioner contends that punishing him for writing the

note violated his First Amendment rights.  (Doc. 1, p. 10).

These allegations, however, fail to allege even hypothetical collateral consequences,

much less actual ones.  In Wilson,  the inmate at least *alleged* collateral consequences--an

increase in his "classification" score, denial of conjugal visits, and transfer to a higher security

facility--although the Ninth Circuit ultimately rejected these purported consequences on various

grounds.  By contrast, in this case, Petitioner has not alleged *any* collateral consequences apart

from the loss of credits themselves.  Thus, there is nothing on which the Court could make a

finding that actual collateral consequences, apart from the credit loss, resulted from the contested

disciplinary hearing.[1]

For the foregoing reasons, the Court concludes that there is no case or controversy, the

claims in the petition are moot, and there is no relief which the Court could afford Petitioner even

were the case not moot.  Wilson, 319 F.3d at 482.

---

[1]Indeed, even were this Court to agree with the claims contained in Grounds Two, Three, or Four of the instant petition, the only relief to which Petitioner would be entitled would be an order that the prison officials re-hear the RVR and re-assess Petitioner's claimed misconduct in light of their own procedures.  As a result of Petitioner's appeal, the ten-day credit assessment was reversed, an indication that the prison authorities had already re-assessed Petitioner's conduct on their own initiative.  Just as when petitioners who successfully argue in federal habeas that a constitutional violation occurred in their convictions are not entitled to immediately go free, but are instead subject to retrial, Petitioner in this case would be subject to the same type of administrative re-trial procedure, with the next RVR hearing officer being able to assess the alleged misconduct itself once again.  Thus, there is no relief that the Court could afford Petitioner even were his claims not moot.  And, given his failure to allege any collateral consequences, he has failed to establish sufficient grounds for this Court to find jurisdiction over this matter.

<u>ORDER</u>

Accordingly, the Court HEREBY ORDERS as follows:

1.  That Respondent's Motion to Dismiss (Doc. 8), is GRANTED; and,

2.  That the habeas corpus Petition (Doc. 1), is DISMISSED with prejudice as MOOT.

3.  The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the file. IT IS SO ORDERED.

**Dated:      March 23, 2006                    /s/ Oliver W. Wanger**
emm0d6                                  UNITED STATES DISTRICT JUDGE